CHRIS T. BARNETTE, Judge pro tern.
For the written reasons to be handed down in due course:
It is ordered, adjudged and decreed that the judgment of the Civil District Court for the Parish of Orleans granting judgment in favor of Thomas Barr, III, Member, Tenth Ward Orleans Parish Democratic Executive Committee against Henry J. Engler, Chairman of, and Orleans Parish Democratic Executive Committee ordering said defendants to adopt resolution No. 3, *30 providing for the ordering of a primary-election for the purpose of nominating a candidate for the office of Judge of Municipal Court of New Orleans for the term expiring December 31, 1968, is hereby reversed and plaintiff’s suit is dismissed.
Reversed.
YARRUT and SAMUEL, JJ. dissent because they conclude that the judgment of the District Court is correct, reasons to follow.
WRITTEN REASONS
CHRIS T. BARNETTE, Judge pro tem.
On June 27, 1963, the Honorable Joseph R. Bossetta was appointed by the Governor and confirmed by the State Senate to the office of Judge of the Municipal Court of New Orleans to fill the vacancy created by the election of the incumbent judge to the Civil District Court for the Parish of Orleans. The term of office to which Judge Bossetta was appointed runs to December 31, 1968.
At a meeting of the Orleans Parish Democratic Executive Committee on May 22, 1964, a resolution was offered by Thomas Barr, III, a member of the Committee, the substance and effect of which was to order the calling of a primary election for the purpose of nominating candidates for the office of Judge of the Municipal Court of New Orleans for the balance of the term ending December 31, 1968. By a majority vote of the Committee the motion was tabled.
On May 25, 1964, the said Thomas Barr, III, in his capacity as a member of the Executive Committee, brought a mandamus proceeding in the Civil District Court for the Parish of Orleans against Henry J. Engler, Chairman of, and the Orleans Parish Democratic Executive Committee to compel the Committee to adopt the aforesaid resolution which is specifically referred to as Resolution No. 3. Joseph R. Bossetta intervened in that proceeding praying for judgment in favor of defendants and himself as intervenor, dismissing plaintiff’s demands. He also filed exceptions of no cause or right of action. Answer was filed on behalf of the defendants Engler, Chairman of, and on behalf of the Committee.
On May 27, 1964, the proceeding for mandamus was tried before Division “C” of the Civil District Court, and the exceptions of no cause or right of action filed by the intervenor were overruled, and judgment was rendered for plaintiff as prayed for, more particularly as follows:
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Thomas Barr, III, Member Tenth Ward Orleans Parish Democratic Executive Committee and against the defendants, Henry J. Engler, Chairman of the Orleans Parish Democratic Executive Committee and the Orleans Parish Democratic Executive Committee, ordering the said Orleans Parish Democratic Executive Committee to hold a meeting on May 27, 1964 at 4:00 o’clock P.M. in Division ‘A’ of the Civil District Court for the Parish of Orleans, 421 Loyola Avenue, and at said meeting adopt resolution No. 3 providing for the ordering of a primary for the purpose of nominating a candidate for the office of Judge ‘Municipal Court of New Orleans’ for the term expiring December 31, 1968.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that should the Orleans Parish Democratic Executive Committee fail to hold said meeting, for any reason, or should the Orleans Parish Democratic Executive Committee fail to adopt said resolution No. 3, then and in either of these events, or in any event, this judgment shall be and it is hereby ordered to be the adoption of Resolution No. 3 providing for the ordering of a primary for the purpose of nominating candidates and calling and ordering the holding of primary elections for the pur *31 pose of nominating candidates for Judge ‘Municipal Court of New Orleans’ for the term expiring December 31, 1968.”
Shortly before 4:00 P.M., May 27, 1964, an application for writs of Certiorari, Prohibition and Mandamus to Division “C” of the Civil District Court for the Parish of-Orleans was filed in this Court on behalf of Joseph R. Bossetta, intervenor. The writ was granted and because of the necessity that a definitive action be taken thereon before 12:00 midnight, an instanta hearing was ordered in this Court.
The office of Judge of the Municipal Court of New Orleans is a constitutional office, having been created and established by Article VII, Section 94 of the LSA-Constitution. Paragraph (c) of that article provides as follows:
“The successors to the judges of said court in office at the time of the final adoption of this amendment to the Constitution shall be elected for an eight year term at the respective nearest Congressional election preceding the expiration of the respective terms of office of such judges. Every term shall expire on December 31st of the last year thereof. Any vacancy in said Court for any cause where the unexpired term is less than one year shall be filled temporarily by appointment by the Governor until the next succeeding congressional election, at which time such vacancy shall be filled for the remainder of the unexpired term by election. All judges so elected shall take office on the first day of January following their election.”
It is clearly established in the jurisprudence of this State that a distinction shall be made between offices created by the Constitution and those created by legislative act. This Court, in the recent case of State ex rel. Fonseca v. McCulloch, La.App., 126 So.2d 191, again made this distinction and upheld the authority of the Governor to fill vacancies by appointment in constitutionally created offices. No issue has been raised in the present case as-was in the Fonseca case of the authority of the Governor to make the appointment; on the contrary, it is conceded. The question is for how long shall such appointment be made? Does it continue to the expiration of the term which has begun to run, namely, December 31, 1968? Or does it, as plaintiff contends, run only until the next succeeding Congressional election ? The Congressional election to be held in November, 1964, is the first such election-since the appointment was made. Plaintiff’s contention is that Judge Bossetta’s tenure by appointment comes to an end at that time and that it is the mandatory duty of the Democratic Executive Committee to call a primary election for nominations to the office for the balance of the unexpired' term.
In the Fonseca case, supra, the question of the duration of the appointment was not raised. That is the only distinction between that case and the present one. Both cases come under Article VII, Section 94 of the Constitution, but under different subsections.
In the Fonseca case, this Court through Yarrut, J., its organ said:
“Constitution Art. 7, § 94, makes no-provision for filling a vacancy where the remainder of the term is more than-one year, so we must look elsewhere in the Constitution for the answer.
“We first considered Art. 7, § 69 as-a possible clue to the answer. The Section reads:
“ ‘Vacancies occasioned by death, resignation, or otherwise, in the office of district judge, district attorney, sheriff, assessor, or clerk of the district court, where the unexpired portion of the term is less than one year, shall be filled by appointment by the Governor, with the advice and consent of the Senate. In all cases where the unexpired portion of the term is one year, *32 or more, the vacancy shall he filled by special election, to be called by the Governor, and held within sixty days after the occurrence of the vacancy, under the general election laws of the State. (As amended Acts 1952, No. 576, adopted Nov. 4, 1952).’
“A simple perusal discloses that the' first sentence names the specific offices involved where the vacancy is less than one year. The Governor is given the right to make the appointment. Then follows the second sentence, beginning with the clause, ‘In all cases where the unexpired portion of the term is one year, or more, * * * Then follows the mandate that the Governor must call an election within sixty days after occurrence of the vacancy. At first blush it might appear that the clause, ‘In all cases * * * ’ might include Traffic Judge [or Municipal Judge]. In order to give the language such an interpretation, it would be necessary first to redraft the clause by interpolating therein the word ‘other’ and the phrase ‘not heretofore mentioned herein,’ so that the entire provision would read, ‘In all other cases not heretofore mentioned herein * * ’.
“Such a construction or interpolation would be clear judicial legislation and contrary to the rule of statutory and constitutional construction. Unless a different intention is apparent, the enumeration of specified matters in a constitutional provision usually is construed as an exclusion of matters not enumerated. (Citing cases.)
“The applicable constitutional provision in Art. 5 § 11, the omnibus section under Executive Department, referring to the Governor, reading:
“ ‘He shall nominate, and, by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution and whose appointment, or election, is not herein otherwise provided for; except that the Legislature may provide the mode of filling all offices created by it.’
“Accordingly, the Governor had a right to make the appointment of plaintiff-appellee to fill the vacancy at issue here.”
The language of this Court above quoted answers fully the question of the authority of the Governor to make the appointment and it is now readopted as the opinion of the Court in the instant case. This brings us to the question, for how long is such appointment valid?
That portion of Article VII, Section 94, reading as follows:
"* * *
“Any vacancy in said Court for any cause where the unexpired term is less (emphasis added) than one year shall be filled temporarily by appointment by the Governor until the next succeeding congressional election, at which time such vacancy shall be filled for the remainder of the unexpired term by election. * * * ”
was apparently drafted with the intention to provide a temporary gubernatorial appointment if the unexpired term is more than one year. This same word “less” is repeated in the corresponding VII, Section 94; II Traffic Court, Subsection (c). Obviously, any vacancy for less than a year would never call for an appointment other than a temporary one. However logical or persuasive this argument may be, we must repeat again the words of this Court above in the Fonseca case, “Such a construction * * * would be clear judicial legislation and contrary to the rule of statutory and constitutional construction.”
The contention that the appointment can be for no longer term than until the next Congressional election is not based upon any pertinent authority in the statutes or jurisprudence brought to our attention, but rather upon analogy and an attempt to read into the Constitution a political concept of democratic practice. Let us not overlook the *33 fact that Article VII, Section 94, adopted as an amendment in 1952, was an act of the people of the State of Louisiana, who by their vote of approval adopted the section as written.
The Court has no more right to substitute the word “more”' for the word “less” than we have to substitute the word “six” or “twelve” for the word “eight” in reference to term by some analogy that other judicial terms may be six or twelve years. The plaintiff’s contention cannot be upheld without in effect doing precisely this.
Any argument from analogy as to what might be considered to be “public policy” or the “democratic way” is answered by the well-settled proposition that the Courts have no jurisdiction in political matters and can control the actions of a Political Party Committee only in those cases where the Constitution or statutes impose a clear ministerial duty upon the Committee. In such cases the courts may compel the Committee to obey the law as written.
In the instant case, although the Committee is required to call a primary election for each office which is to be filled in the Congressional election to be held in November, 1964, there is no constitutional or statutory provision which says that the office of Municipal Judge is one of the offices to be filled in such election. There is therefore no ministerial duty imposed by law on the Committee to call a primary election for this particular office at this time. There being no ministerial duty imposed by law on the Committee, the courts are without jurisdiction to compel the Committee to call a primary on the theory that “public policy” or the “democratic way” would indicate that “there should be a law.”
The learned judge of the Civil District Court has attempted to base his judgment upon some analogy to Article VII, Section 69, relating to District Judgeship on the theory of the reasoning there implied. This cannot be done, no matter how desirable it may be.
The judge of the trial court said in his reasons for judgment:
“The Legislature has evidenced an intent time after time that the Electorate should decide Judgeships. Governors continue to make appointments for terms longer than the Constitution intends and longer than the Legislature intended; and one of these days we’re going to have to put a stop to it. We’re either going to follow the Constitution and the laws or we’re not, and if there are any doubts to be resolved as to what is in the public interest, if the law is vague and uncertain, as may be urged, then I resolve that doubt in favor of the Electorate of New Orleans determining who shall fill public offices, not the Governor of the State nor any other appointive official.
“To allow an elective office to be unduly tied up by appointment impinges upon the right of the Electorate to choose their officers. * * * ”
We thoroughly agree with our learned brother. We, too, abhor the thought that judgeships should become political plums to be handed out by governors for long terms without giving to the electorate an opportunity to express a preference. But this is not the forum in which to air our political opinions, nor the proper place for amending the Constitution.
We agree that Article VII, Section 94 of the Constitution is poorly drawn, and there is a logical assumption that another intention might have been its object, but this is at most an assumption. The language is not ambiguous and is not subject to any interpretation other than that we have given to it. A correction of the error, if there be one in Article VII, Section 94, is not a function of this Court but one of legislative process by constitutional amendment.
 It is argued that the Court should read into the Constitution (Art. VII, Sec. *34 94) the apparent intent to say one thing when it says the opposite. We would not hesitate to search for the intent of such language in our jurisprudence or of the Legislature in a poorly worded statute, but this is the Constitution, our basic law. We dare not open the door for Courts to substitute their words for those of the Constitution upon a pretext of search for a hidden intent. However justifiable and desirable it may seem in the instant case, the next time it may not be so. This indeed would be a dangerous precedent and could lead to disastrous ends.
For these reasons:
It is ordered, adjudged and decreed that the judgment of the Civil District Court for the Parish of Orleans granting judgment in favor of Thomas Barr, III, Member, Tenth Ward Orleans Parish Democratic Executive Committee against Henry J. Engler, Chairman of, and Orleans Parish Democratic Executive Committee ordering said defendants to adopt resolution No. 3, providing for the ordering of a primary election for the purpose of nominating a candidate for the office of Judge of Municipal Court of New Orleans for the term expiring December 31, 1968, is hereby reversed and plaintiff’s suit is dismissed.
Reversed.